IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dobson Park Management, LLC, :
general partner of and trading as the :
Leonard J. Dobson Family Limited :
Partnership :
 : No. 570 C.D. 2018
   v. :
 : Argued:  December 11, 2018
Property Management, Inc. and :
Waverly Woods I Condominium :
Association, :
    Appellants :


BEFORE: HONORABLE ROBERT SIMPSON, Judge
    HONORABLE PATRICIA A. McCULLOUGH, Judge
    HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION BY
JUDGE McCULLOUGH    FILED:  February 13, 2019


   Property Management, Inc. and Waverly Woods I Condominium Association (collectively, Appellants) appeal from the July 18 and December 20, 2017 orders of the Court of Common Pleas of Dauphin County (trial court) granting the motions for summary judgment and for attorney fees filed by Dobson Park Management, LLC, general partner of and trading as the Leonard J. Dobson Family Limited Partnership (Dobson), and entering judgment in favor of Dobson and against Appellants in the amounts of $3,483.98 and $6,435.00, respectively.

## Facts and Procedural History

The underlying facts of this case are not in dispute. On January 21, 2016, Dobson purchased unit #4613 of Waverly Woods I, A Condominium (Waverly Woods) at a judicial sheriff's sale. On March 1, 2016, the Dauphin County Sheriff issued the deed for this unit to Dobson. Dobson thereafter contracted with Kathryn Harbilas to sell its interest in unit #4613. Prior to the closing of this sale, Dobson contacted Appellants in order to obtain all documents required by section 3407 of the Uniform Condominium Act, 68 Pa.C.S. §3407, which governs the resale of condominium units. On April 21, 2016, Appellants provided Dobson with a Condominium Resale Certificate demanding payment of $4,011.98, which represented the allegedly outstanding balance of unpaid common expenses, late fees, and other special assessments due with respect to unit #4613. This amount included a charge in the amount of $2,251.98 for "emergency services rendered on December 30, 2015." (Trial court op., July 18, 2017, at 1-2.)

Dobson and Appellants were unable to resolve the issue of these outstanding charges prior to Dobson's scheduled closing with Ms. Harbilas. As a result, by letter dated May 5, 2016, Dobson advised Appellants that it would pay the disputed charges under protest, reserving its right to pursue subsequent legal action to settle the controversy. Specifically, the letter stated that Dobson was making the payment "**UNDER PROTEST AND DISPUTE** and **WITHOUT PREJUDICE**."[1] On May 31, 2016, Dobson paid to Appellants the sum of $4,338.85.[2] Shortly thereafter,

---

[1] A copy of the letter is attached as Exhibit B to Dobson's complaint, which is identified as Item No. 2 in the original record.

[2] The record is unclear as to why this amount exceeded Appellants' original demand of $4,011.98.

Dobson filed a complaint with the trial court seeking a declaratory judgment in its favor in the amount of $3,483.98[3] plus attorney fees and costs.[4] On February 22, 2017, Dobson filed a motion for summary judgment with the trial court along with a supporting brief. Appellants did not respond to this motion. However, the trial court later permitted Appellants to file a response *nunc pro tunc*, but they did not file a supportive brief as permitted under Dauphin County Local Rule 1034(a). (Trial court op., July 18, 2017, at 1-2.)

Dobson filed a brief in response to Appellants' *nunc pro tunc* filing, and on July 10, 2017, Appellants filed a brief in response to Dobson's brief. By order dated July 18, 2017, the trial court granted Dobson's motion for summary judgment and entered judgment in favor of Dobson and against Appellants in the amount of $3,483.98.[5] The trial court concluded that Appellants failed to produce evidence to establish or contest any genuine issue of material fact. The trial court described Appellants' *nunc pro tunc* response to Dobson's motion for summary judgment as containing "scant, one-sentence assertions" that "amount to nothing more than general denials and/or bald allegations, and do not dissuade this Court from finding [Dobson]

---

[3] Dobson acknowledged in its complaint that Appellants were entitled to $854.87 and subtracted this amount from the sum paid on May 31, 2016 ($4,338.85 - $854.87 = $3,483.98).

[4] Appellants filed an answer with new matter, included as Item No. 17 in the original record, denying the allegations of the complaint and contending that Appellant Property Management, Inc. (PMI) was not the property manager at the time of the sheriff's sale; Dobson failed to identify to whom it paid the monies at issue; Dobson's payment under protest had no legal significance; payment of the disputed sum constituted an accord and satisfaction; and Dobson is not entitled to attorney fees.

[5] In a later opinion dated August 18, 2017, the trial court acknowledged that Appellants filed a brief on July 10, 2017, but noted that it did not review said brief prior to issuing its opinion because it had not been entered on the docket. Nevertheless, the trial court stated that the brief did not present any argument that would have altered its decision. (Trial court op., August 18, 2017, at 2.)

is entitled to summary judgment as a matter of law." (Trial court op., July 18, 2017, at 6.)

Further, the trial court, relying on section 3315(b)(2) of the Uniform Condominium Act, 68 Pa.C.S. §3315(b)(2),[6] explained that any unpaid common expense assessments accrued during the six months prior to Dobson purchasing the condominium unit should have been cured with the proceeds from the judicial sheriff's sale. Because such assessments were not satisfied via these proceeds, the trial court concluded that the same were divested via the judicial sheriff's sale and Appellants were not entitled to the same. The trial court concluded that the same reasoning applied to the charge in the amount of $2,251.98 for "emergency services rendered."[7] Finally, the trial court concluded that Dobson, as the prevailing party, was entitled to reasonable attorney fees and costs pursuant to section 3315(f) of the Uniform Condominium Act, 68 Pa.C.S. §3315(f).[8] (Trial court op., July 18, 2017, at 4-6.)

Appellants filed a motion for reconsideration alleging that the trial court erred as its order was based on the conclusion that they had not filed a brief in

---

[6] Section 3315(b)(2) generally provides that an "association's lien for assessments shall be divested by a judicial sale of the unit." 68 Pa.C.S. §3315(b)(2).

[7] The trial court noted that Appellants produced an affidavit from Antoinette Black, a property management professional employed by Appellant PMI, detailing that PMI was not the management company for Appellant Waverly Woods I Condominium Association at the time of the sheriff's sale but became such on March 1, 2016, and reported the assessments and charges on the resale certificate to Dobson. Black stated that all funds in this case, *i.e.*, the monies paid by Dobson, were deposited into the account of Appellant Waverly Woods I Condominium Association. The trial court stated that the fact that PMI was not the property manager at the time of the sheriff's sale was immaterial for purposes of Dobson's motion for summary judgment and did not change the fact that Dobson was entitled to repayment of the monies paid under protest.

[8] Section 3315(f) provides that "[a] judgment or decree in any action or suit brought under this section shall include costs and reasonable attorney's fees for the prevailing party." 68 Pa.C.S. §3315(f).

accordance with Dauphin County Local Rule 1034(a). Appellants also alleged that their briefs and related filings provided sufficient bases to justify denial of Dobson's motion for summary judgment; their briefs cited cases standing for a position opposite the one cited by Dobson; Dobson could not seek return of the monies voluntarily paid to them; Dobson cannot, as a matter of law, maintain its cause of action; and there was no evidence that Appellant PMI received or retained the monies at issue. (Trial court op., August 18, 2017, at 3-6.)

By opinion and order dated August 18, 2017, the trial court denied Appellants' motion for reconsideration. With respect to Appellants' argument concerning Dauphin County Local Rule 1034(a), the trial court stated that Appellants focused on a single sentence within a discussion of the factual background in its July 18, 2017 opinion and misapplied the same. The trial court explained that it permitted Appellants to file a *nunc pro tunc* response to Dobson's motion for summary judgment and they could have filed a supporting brief at that time pursuant to Dauphin County Local Rule 1034(a) but did not. The trial court noted that Appellants did not file a brief until after Dobson filed a brief in response to Appellants *nunc pro tunc* filing. The trial court described Appellants' assertion that it filed a brief in response to Dobson's motion for summary judgment as "factually inaccurate" and "meritless."

Further, the trial court noted that its decision was not premised on Appellants' lack of filing a brief, but instead was based on its interpretation of section 3315(b) of the Uniform Condominium Act and related case law. With respect to Appellants' remaining assertions, the trial court described the same as "bare assertions" that "contain no explanation, no legal argument, and no supporting authority." Finally, the trial court characterized Appellant PMI's assertion that it never received or retained

the monies at issue as repetitive of its argument that was previously rejected. (Trial court op., August 18, 2017, at 3-6.)

Dobson thereafter filed a motion to set hearing to assess attorney fees. Counsel for Dobson sought fees totaling $6,435.00, representing 21.45 hours of work at his standard rate of $300.00 per hour.[9] Following hearing and oral argument on December 20, 2017, the trial court issued an order granting Dobson's motion and awarding its counsel reasonable and necessary fees in the amount requested above. Appellants filed a notice of appeal with the trial court.[10] By order dated February 7, 2018, the trial court directed Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants filed this statement on February 28, 2018, raising the same issues as set forth in their motion for reconsideration. By order dated March 1, 2018, the trial court noted that these issues were adequately addressed in its prior opinions of July 18 and August 18, 2017, and, therefore, no further opinion would be filed.

## Discussion

On appeal,[11] Appellants reiterate the arguments raised below, namely that the trial court erred in granting summary judgment where the only factual evidence

---

[9] Dobson's motion is included in the original record at Item No. 45.

[10] Appellants originally appealed to our Superior Court. However, by order filed March 15, 2018, the Superior Court transferred the matter to this Court.

[11] On appeal from a trial court's order granting or denying summary judgment, an appellate court's standard of review is *de novo* and the scope of review is plenary. *Seda-Cog Joint Rail Authority v. Carload Express, Inc.*, 185 A.3d 1232, 1236 (Pa. Cmwlth. 2018), *appeal granted*, 2019 Pa. Lexis 407 (Pa. 2019). Summary judgment is properly entered only when, after examining the record in the light most favorable to the non-moving party, and resolving all doubts as to the existence of a genuine issue of material fact against the moving party, the moving party is clearly entitled to judgment as a matter of law. *Id.*

contradicted Dobson's claims; Dobson's protest letter with a notice of intent to reclaim was insufficient to maintain a cause of action for return of funds paid from one party to another; Dobson failed to allege or establish that funds were provided to both Appellants; section 3315 of the Uniform Condominium Act was misapplied; and Dauphin County Local Rule 1034 was not properly applied.

**Factual Evidence**

With respect to this argument in their brief, Appellants merely recite the standard for granting summary judgment and their argument consists of a single sentence stating "the trial court granted summary judgment in contradiction to the only Pennsylvania authority that has addressed the issues related to this case and in contradiction to the only facts of record that addressed the relevant issues." (Appellants' Amended Brief at 15.) As a result, Dobson contends that any argument in this regard should be deemed waived as a result of Appellants' failure to diligently prosecute the same.

An issue that is not addressed or developed in the argument section of a brief may be waived. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); *Pennsylvania Gaming Control Board v. Unemployment Compensation Board of Review*, 47 A.3d 1262, 1265 (Pa. Cmwlth. 2012) (concluding that failure to develop an issue in a brief will result in waiver); *Watkins v. Unemployment Compensation Board of Review*, 689 A.2d 1019, 1022 (Pa. Cmwlth. 1997) (concluding that arguments not properly presented in the argument portion of a brief in support of

7

the issue raised in the statement of questions involved are waived).  Here, Appellants fail to cite any relevant authority in support of their position.  Additionally, Appellants failed to reference the pertinent facts to which they point in their brief.  Hence, we agree with Dobson that this argument has been waived by Appellants.

## Protest Letter

Appellants argue that a protest letter with a notice of intent to reclaim was insufficient to maintain a cause of action for the return of funds paid from one party to another.  We agree.

Dobson elected to pay the funds to Appellants in order to enable the closing of its sale of unit #4613 to a third party, from which Dobson presumably benefitted.  In other words, Dobson received a benefit of having paid these funds.  Dobson did not have to remit this payment prior to closing.  Instead, Dobson could have postponed the closing to address the legal issues regarding the outstanding charges sought by Appellants.  Although Dobson might contend that a postponement of the closing would have resulted in the loss of a sale, the fact remains that its payment to Appellants was voluntary.  As Appellants note in their brief, the law is well-established that a plaintiff cannot recover monies voluntarily paid.  *See Peebles v. Pittsburgh*, 101 Pa. 304, 309 (1882) ("Where the payment is voluntary . . . a protest with notice of an intent to reclaim, is not sufficient to sustain a recovery.  The voluntary character of the payment still remains, notwithstanding the notice, and is fatal to the action."); *Union Insurance v. City of Allegheny*, 101 Pa. 250, 255 (1882) (money paid under protest does not make the payment involuntary or compulsory); *Friedline v. Somerset Borough*, 173 A. 434, 435 (Pa. Super. 1934) ("[A] voluntary payment of money under a claim of right cannot in general be recovered back.").

8

Dobson's previous reliance on *Naumberg v. Home Unity Savings and Loan Association*, 26 Pa. D. & C.2d 147 (C.P. Bucks 1961), for support was misplaced. As Appellants indicate, in *Naumberg*, a plaintiff made a payment, without prejudice, to a creditor, whereupon the creditor marked a court docket satisfied and removed a judgment. The plaintiff thereafter filed suit seeking a return of part of this payment. Appellants state that the common pleas court in that case dismissed the plaintiff's action because a notation of protest/without prejudice had no legal significance and cite to the following holding of the common pleas court:

> A voluntary payment of money under a claim of right cannot, in general, be recovered back. There must be compulsion, actual, present and potential, in inducing the payment by force of process available for instant seizure of person or property. The element of coercion being essential, mere protest or notice will not change the character of the payment from voluntary to involuntary or confer of itself a right of recovery.

*Id.* at 150. In the present case, Dobson failed to allege or argue compulsion and, therefore, there is no basis upon which to distinguish *Naumberg* from this case.

In addition, Dobson's previous reliance on *In re: Bell*, 25 A.2d 344 (Pa. 1942), is likewise misplaced. Dobson relies on the following passage from *In re: Bell*:

> The phrase "without prejudice" ordinarily imports the contemplation of further proceedings . . . . "The words 'without prejudice' import into any transaction that the parties have agreed that as between themselves the receipt of money by one and its payment by the other shall not of themselves have any legal effect on the rights of the parties, but they shall be open to settlement by legal controversy as if the money had not been paid.

25 A.2d at 350. However, Appellants point out that said case involved a common pleas court order that had been issued without prejudice and not a payment by a private party. As Appellants properly note, a private party lacks the power of a court to reserve further

9

proceedings. Moreover, Dobson's reliance on the cases of *PNC Bank, National Association v. Balsamo*, 634 A.2d 645 (Pa. Super. 1993), and *Law v. Mackie*, 95 A.2d 656 (Pa. 1953), is also misplaced. In *PNC Bank*, the focus was on whether consideration was exchanged following a dispute as to the amount due and *Law* merely recognized that a payment subject to a bona fide dispute could create an accord and satisfaction, provided consideration existed. The facts of these cases clearly distinguish them from the case *sub judice*.

## Payment of Funds

Appellants next argue that the affidavit of Black established that Appellant PMI received and retained no money from Dobson and that Dobson failed to plead any facts or introduce evidence that it had. Appellants note that Dobson's complaint merely stated that it paid the funds but did not state to whom these funds were paid, which Appellants allege is insufficient to obtain summary judgment, especially in light of a contradictory affidavit. However, there is no dispute that Appellant PMI became property manager for Waverly Woods on March 1, 2016, and that Appellant PMI was property manager at the time the resale certificate was issued, when the protest letter was sent, and when the disputed funds were paid. Further, Black's affidavit appears to confirm that payment was made to Appellant PMI by virtue of her acknowledgement that all funds in this case were deposited into the account of Waverly Woods. In other words, the payment was made from Dobson to Appellant PMI, with the latter depositing the funds into the account of Waverly Woods.

10

## Section 3315 of the Uniform Condominium Act

Appellants argue that the trial court misapplied section 3315 of the Uniform Condominium Act with respect to lien divestiture.

Section 3315 of the Uniform Condominium Act states as follows:

(a) *General rule.* -- The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. The association's lien may be foreclosed in like manner as a mortgage on real estate. A judicial or other sale of the unit in execution of a common element lien or any other lien shall not affect the lien of a mortgage thereon, except the mortgage for which the sale is being held, if the mortgage is or shall be prior to all other liens upon the same property except those liens identified in 42 Pa.C.S. § 8152(a) (relating to judicial sale as affecting lien of mortgage) and liens for condominium assessments created under this section. Unless the declaration otherwise provides, fees, charges, late charges, fines and interest charged pursuant to section 3302(a)(10), (11) and (12) (relating to powers of unit owners' association) and reasonable costs and expenses of the association, including legal fees, incurred in connection with collection of any sums due the association by the unit owner or enforcement of the provisions of the declaration, bylaws, rules or regulations against the unit owner are enforceable as assessments under this section. If an assessment is payable in installments and one or more installments is not paid when due, the entire outstanding balance of the assessment becomes effective as a lien from the due date of the delinquent installment.

(b) *Priority of lien.*

    (1)   *General rule.* -- A lien under this section is prior to all other liens and encumbrances on a unit. . . .

11

> (2) *Limited nondivestiture.* -- The association's lien for assessments shall be divested by a judicial sale of the unit:
>
>> (i) As to unpaid common expense assessments made under section 3314(b) (relating to assessments for common expenses) that come due during the six months immediately preceding the date of a judicial sale of a unit in an action to enforce collection of a lien against a unit by a judicial sale, only to the extent that the six months' unpaid assessments are paid out of the proceeds of the sale.

68 Pa.C.S. §3315(a), (b)(1)-(2)(i).

Dobson argues that the trial court properly interpreted this section as requiring any unpaid common expense assessments accrued during the six months prior to Dobson purchasing the condominium unit to be paid from the proceeds from the judicial sheriff's sale and that the failure to do so resulted in a divestiture of Appellants' lien. We disagree with this interpretation by the trial court.

There is no dispute that Appellants are entitled to a lien for unpaid common expense assessments that became due during the six months immediately preceding the judicial sale of unit #4613, *i.e.*, the six months prior to January 21, 2016, the date of the sale, in accordance with section 3315(b)(1). There is also no dispute that Appellants' lien could have been divested by the judicial sale to Dobson in accordance with section 3315(b)(2). However, section 3315(b)(2)(i) contains language restricting such a divestiture to a specific situation, *i.e.*, when the assessments are

12

actually paid from the proceeds of the judicial sale. Such an interpretation is the only logical interpretation of this section, and one that serves the interests of both Dobson and Appellants. This interpretation protects Dobson by precluding Appellants from pursuing a double recovery of such assessments after they have been paid, as well as protecting Appellants' right to collect these proceeds via alternative means when, as here, the assessments have not been paid from the proceeds of the judicial sale.[12]

## Dauphin County Local Rule 1034

Finally, Appellants argue that the trial court erred in granting summary judgment on the basis that they failed to comply with Dauphin County Local Rule 1034(a). However, as the trial court explained in its August 18, 2017 opinion, Local Rule 1034(a) did not serve as the basis for its decision. Hence, we need not further address this argument.

## Conclusion

Appellants have waived any argument relating to factual evidence by failing to properly address and develop this argument in their brief. Dobson's voluntary payment of monies to Appellants, even under protest and without prejudice, was insufficient to permit recovery of the same. Contrary to Appellants' contention, the affidavit of Black does not establish that Appellant PMI received and retained no monies from Dobson. The trial court erred in its interpretation of section 3315 of the

---

[12] In the course of this argument, Appellants also averred that an award of attorney fees to Dobson was in error and inconsistent with section 5315(g) of the Uniform Condominium Act, 68 Pa.C.S. §5315(g), since the trial court never granted Dobson the relief it initially requested, *i.e.*, a declaratory judgment. Section 5315(g) also provides that such attorney fees are awarded to the prevailing party. In light of our conclusion above, the trial court's grant of summary judgment was improper and, hence, Dobson is no longer a prevailing party entitled to attorney fees.

13

Uniform Condominium Act. In light of the above, the trial court's grant of summary judgment in favor of Dobson was in error. Consequently, the trial court's award of attorney fees to Dobson as the prevailing party was likewise in error.

Accordingly, the orders of the trial court are reversed, and the matter is remanded to the trial court for further proceedings.


_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dobson Park Management, LLC,           :
general partner of and trading as the  :
Leonard J. Dobson Family Limited       :
Partnership                            :
                                       :
                                       :   No. 570 C.D. 2018
                    v.                 :
                                       :
Property Management, Inc. and          :
Waverly Woods I Condominium            :
Association,                           :
                    Appellants         :

## *__ORDER__*

AND NOW, this 13th day of February, 2019, the orders of the Court of Common Pleas of Dauphin County, dated July 18 and December 20, 2017, are hereby reversed, and the matter is remanded to the trial court for further proceedings.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge