IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Suburban Realty, L.P., | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 715 C.D. 2019 |
| | : | SUBMITTED: May 12, 2020 |
| Stroud Township Zoning Hearing | : | |
| Board and Stroud Township Board | : | |
| of Supervisors | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                                           FILED: July 9, 2020

Appellant Suburban Realty, L.P., (Suburban) appeals from the Court of Common Pleas of Monroe County's (Trial Court) May 8, 2019 order, through which the Trial Court affirmed the Stroud Township Zoning Hearing Board's (Zoning Board) September 5, 2018 decision. In that decision, the Zoning Board affirmed the determination of Stroud Township's zoning officer that Suburban could not rely upon another Zoning Board decision, which had been issued in 2002, in order to build 42 off-street parking spaces that had been "reserved" through that 2002 decision. In addition, the Zoning Board denied Suburban's request for a dimensional variance pertaining to the impervious coverage limit imposed by Stroud Township's Zoning Ordinance, which also impeded construction of those 42 spaces. After thorough review, we affirm.

## I. Facts and Procedural History

Suburban is the current owner of a property located at 1581 North 9th Street in Stroud Township, Pennsylvania (Property). Board's Decision (Decision),

Findings of Fact (F.F.), ¶2. This Property is zoned C-2 commercial and has an 18,563-square-foot, single-story commercial building, as well as 43 off-street parking spaces, within its bounds. *Id.*, F.F., ¶¶3-4.

On April 3, 2002, Francis J. Hager, the then-owner of the Property, filed an application for relief with the Zoning Board, in furtherance of his plan to open a La-Z-Boy furniture store on the premises. Reproduced Record (R.R.) at 199a-202a. Under Schedule 27-VI of Stroud Township's Zoning Ordinance, which governs off-street parking requirements, the proposed La-Z-Boy store fell within the classification of "Commercial - Retail, services, and commercial entertainment[.]" Decision at 8; Zoning Ordinance, Schedule 27-VI, Regulations for Off-Street Parking Spaces; *see* Zoning Ordinance § 27-801(1) ("Off-Street Parking Space Requirement. Off-street parking spaces shall be provided, as set forth in Schedule 27-VI whenever any building is erected, enlarged, converted or is otherwise required.").[1] As such, Hager needed to provide "1 [off-street parking spot] for every 200 gross square feet [of building space.]" Decision at 8; Zoning Ordinance, Schedule 27-VI, Regulations for Off-Street Parking Spaces. Hager requested a dimensional variance from the parking requirements, which Hager claimed necessitated 85 off-street parking spaces, and asked that he be permitted "to build 43 spaces at this time (35 at front & 8 at rear) and reserve area to construct 42 additional spaces in the future." R.R. at 202a. The Zoning Board granted Hager's application on May 1, 2002. *Id.* at 199a-200a. In this approval, the Zoning Board

---

[1] Stroud Township's Zoning Ordinance is inexplicably absent from the Trial Court Record and was not filed of record in this appeal by any of the parties. It is, however, available online at https://ecode360.com/33075932 (last visited July 8, 2020). We therefore take judicial notice of Stroud Township's Zoning Ordinance, as constituted on this website. *See* 42 Pa. C.S. § 6107(a) ("The ordinances of municipal corporations of this Commonwealth shall be judicially noticed.").

noted that Hager was seeking permission "to construct 43 [parking] spaces instead of the minimum required of at least 85[.]"[2] *Id.* at 199a. The Zoning Board stated that it was allowing Hager to build "43 [parking] spaces (35 front; 8 rear) w/ reserve area to construct 42 additional spaces in future." *Id.* at 200a. On October 15, 2002, the Stroud Township Board of Supervisors (Supervisors) gave final approval to Hager's development plan for the Property. Trial Court Record at 78; R.R. at 232a; Decision at 9.[3] Hager then erected an 18,563-square-foot building on the Property, which still exists today, and established the 43 parking spaces he had requested. Decision, F.F., ¶¶6, 13. There is no evidence suggesting, nor do any of the parties claim, that Hager ever built the 42 additional, reserved parking spaces.

On May 5, 2003, the Supervisors enacted Ordinance 3-2003, which, in relevant part, amended the Zoning Ordinance by decreasing the maximum amount of impervious coverage for properties zoned C-2 commercial from 75% to 60%. R.R. at 250a; Zoning Board Hr'g Tr., 8/1/18, at 44.

Hager subsequently sold the Property to AKA-PRA Limited Partnership (AKA), which then submitted a new development plan for the Property to Stroud Township. Decision, F.F., ¶14. AKA's development plan called for changing the use of the Property's building from a retail store to a combined medical office, ambulatory surgery center, and radiology suite. R.R. at 233a; Decision, F.F., ¶15. This change in use also came with different requirements for the provision of off-street parking. Under Schedule 27-VI of Stroud Township's Zoning Ordinance, the

---

[2] It is not clear how either Hager or the Zoning Board determined that Hager was required by the Zoning Ordinance to provide only 85 parking spaces, as 18,563 divided by 200 equals 92.815, or roughly 93.

[3] The pages of the Trial Court Record are not consistently numbered, so we have taken the liberty of using our pinpoint citation to refer to the specific location in this document of each cited item.

Property's use was now classified as "Medical and Related Facilities - Medical, dental and veterinarian[.]" Decision at 8-9; Zoning Ordinance, Schedule 27-VI, Regulations for Off-Street Parking Spaces. Whereas the number of required parking spots had previously been tied to the square footage of the building, it was now directly linked to the number of on-site employees, with the Zoning Ordinance mandating "4 [parking spots] for every doctor, dentist or professional person, plus 1 for every employee and professional[.]" Decision at 8-9; Zoning Ordinance, Schedule 27-VI, Regulations for Off-Street Parking Spaces.

AKA's development plan provided for 41 off-street parking spaces, but made no mention of the 42 previously reserved spots. Zoning Board Hr'g Tr., 8/1/18, at 74; Decision, F.F., ¶19. This reflected AKA's stated intent to provide the requisite amount of parking for 4 doctors, 4 nurses, 1 technician, and 3 administrative staffers (*i.e.*, 24 off-street spots), while leaving room for expanding the number of on-site personnel to a maximum of 7 doctors, 7 nurses, 2 technicians, and 4 administrative staffers (*i.e.*, 41 off-street spots). R.R. at 233a. Altogether, AKA only planned to utilize about 9,000 square feet of space inside the Property's building, or approximately half of the building's footprint. Zoning Board Hr'g Tr., 8/1/18, at 74; Decision, F.F., ¶19. This plan received the final necessary governmental approvals on February 6, 2008, allowing AKA to use the Property's building as medical office space with 41 off-street parking spaces. R.R. at 233a; Decision, F.F., ¶14.

In 2010, AKA requested that the Zoning Board grant a special exception, which would enable AKA to operate a short-term stay medical and surgical facility on the Property, as well as a dimensional variance, which would allow AKA to expand its facilities even though, by doing so, impervious coverage on the Property would consequently exceed the 60% limit set by Ordinance 3-2003. *Suburban*

4

*Realty, L.P. v. Zoning Hr'g Bd. of Stroud Twp.*, (Pa. Cmwlth., No. 1791 C.D. 2010, filed Sept. 29, 2011), slip op. at 1, 7-8, 2011 WL 10846198, at *1, *4.[4] The Zoning Board granted AKA's requested variance, concluding that the relief sought was *de minimis*, as well as the special exception, over Suburban's opposition thereto. *Id.*, slip op. at 7-8, 2011 WL 10846198, at *4. Suburban, which owned an adjacent parcel at that point in time, appealed the Zoning Board's decision to the Trial Court, which affirmed without taking additional evidence, prompting Suburban to appeal the matter to our Court. *Id.*, slip op. at 8-9, 2011 WL 10846198, at *4. Interestingly, in that earlier appeal, Suburban argued before our Court that

> notwithstanding the fact that [AKA] sought a *de minimis* variance [pertaining to the 60% impervious coverage limitation], [AKA] still had to establish the existence of unique characteristics and a hardship that denied [AKA] the reasonable use of the Property. . . . Suburban assert[ed] that [AKA] already enjoy[ed] the reasonable use of the Property and that it [was] the Property, not [AKA], that must suffer the hardship because of the [Zoning] Ordinance's requirements. . . . According to Suburban, [**AKA**]**'s hardship** [**was**] **self-created in that it want**[**ed**] **to construct a larger building and provide more parking than** [**was**] **required by the** [**Zoning**] **Ordinance**[.[5]]

*Id.*, slip op. at 9-10, 2011 WL 10846198, at *5 (internal citations omitted and emphasis added). We agreed with the Trial Court that the Zoning Board had not erred or abused its discretion by determining that AKA's desired variance was *de*

---

[4] Pursuant to Commonwealth Court Internal Operating Procedure § 414(a), 210 Pa. Code § 69.414(a), unreported Commonwealth Court opinions issued after January 15, 2008, may be cited for their persuasive value.

[5] We note, with interest, that Suburban now argues it is entitled to a dimensional variance from the Zoning Ordinance's impervious coverage limitations when, in opposing AKA's request for a *de minimis* variance from the very same impervious coverage limitations, it claimed that AKA's hardship was self-created and, thus, that no variance relief was warranted.

*minimis* or by concluding that AKA had established it was entitled to the special exception and, on those bases, affirmed the Zoning Board's decision. *Id.*, slip op. at 1, 9-20, 2011 WL 10846198, at \*1, \*5-\*10.

AKA subsequently sold the Property on January 15, 2018, to Suburban, which then leased it to St. Luke's Hospital (St. Luke's). Decision, F.F., ¶¶16-17. St. Luke's intended to use the entirety of the Property's building as medical office space, with 19 on-site employees. *Id.*, F.F., ¶¶17-18, 20. As a result, St. Luke's informed Suburban that it needed 101 parking spaces to meet its needs. *Id.*, F.F., ¶21. Suburban sought to satisfy St. Luke's request by proposing that 85 such spaces would be situated on the Property itself, while up to 17 spaces would be built upon another Suburban-owned parcel immediately to the west of the Property. *Id.*, F.F., ¶¶21-22.

On June 4, 2018, Mark R. Wolfe, Esquire (Wolfe), Suburban's attorney, sent a letter to Shawn McGlynn (McGlynn), Stroud Township's zoning officer. In this letter, Wolfe argued that Suburban, as a successor-in-interest to Hager for the Property, was "entitled to construct the additional 42 parking spaces permitted by the 2002 [Zoning] Board [d]ecision and, therefore, utilize the 75% impervious coverage standard implicit in that approval, notwithstanding any subsequent amendments of [Stroud] Township[']s Zoning Ordinance." R.R. at 204a. Wolfe asked McGlynn for a ruling confirming the validity of Wolfe's contention, which would enable Suburban to build these 42 spaces without the need for any additional governmental approvals. *Id.* at 205a. McGlynn responded via email by stating that

he found Wolfe's argument to be without merit and that he would be issuing a formal determination memorializing his conclusions.[6] *Id.* at 206a, 216a.

On July 5, 2018, Suburban appealed McGlynn's determination to the Zoning Board, on the basis that the Zoning Board's 2002 decision authorized Suburban to build the 42 reserved parking spaces, because the variance granted to Hager was still valid and Suburban was Hager's successor-in-interest to the Property. *Id.* at 215a, 218a. In the alternative, Suburban requested a variance from the Zoning Ordinance's impervious coverage limit, which would allow it to build those 42 reserved parking spaces, a step that would result in impervious coverage on the Property that exceeded the 60% allowed by the Zoning Ordinance. *Id.* at 218a. After a public hearing on August 1, 2018, the Zoning Board unanimously voted to affirm McGlynn's ruling and deny Suburban's request for a variance. Zoning Board Hr'g Tr., 8/1/18, at 173-76.

The Board issued its formal decision on September 5, 2018, and Suburban subsequently appealed to the Trial Court. The Trial Court took no additional evidence and affirmed the Zoning Board. This appeal followed.

---

[6] Curiously, the record does not contain any such formal determination. None of the parties have raised this irregularity as an issue, however, so we need not address it further.

## II. Issues on Appeal[7]

Suburban raises the following arguments, which have been restated for clarity's sake. First, the 2002 dimensional variance, which was granted to Hager by the Zoning Board, runs with the land and is still valid, as it was not conditioned on the Property being used in a specific manner. Suburban's Br. at 17-21. Second, the Zoning Board misconstrued the Pennsylvania Municipalities Planning Code (MPC)[8] in determining that the right to build the 42 reserved parking spaces expired 5 years after the Supervisors' approval of Hager's development plan in 2002. *Id.* at 22-26. The right to construct these additional spaces is protected in perpetuity from the 60% impervious coverage limit imposed on properties in Stroud Township zoned C-2 commercial through the passage of Ordinance 3-2003, because Hager substantially completed the improvements to the land required by the Supervisors-approved 2002 development plan within five years of the plan's approval. *Id.* We address each argument in turn.

## III. Discussion

### a. Continued Validity of 2002 Variance

Suburban correctly argues that, in general, a variance does not inhere to a successful applicant, but instead to the affected parcel itself. *Scalise v. Zoning Hr'g Bd. of Borough of W. Mifflin*, 756 A.2d 163, 166-67 (Pa. Cmwlth. 2000). However,

---

[7] Since the Trial Court took no additional evidence, our standard of review is restricted to determining whether the Zoning Board committed an abuse of discretion or an error of law. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639-40 (Pa. 1983). "We may conclude that the [Zoning] Board abused its discretion only if its findings are not supported by substantial evidence. . . . By 'substantial evidence' we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 640 (citations omitted).

[8] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

in arguing that the 2002 variance still allows it to build the 42 reserved parking spaces, Suburban mischaracterizes the very nature of that variance. "A variance is, or should be, a fairly narrowly tailored cure for a site-specific hardship." *Id.* at 167 (citing 53 P.S. § 10910.2(a)(5)).[9] Here, the site-specific hardship facing Hager in 2002 was, as Suburban itself admits, the Zoning Ordinance's then-applicable requirement that 85 off-street parking spaces be built to service the proposed La-Z-Boy furniture store. This variance did not give Hager special authorization to construct those 85 spaces as he was already permitted to build that many if he so chose. Rather, the variance permitted Hager to provide *fewer* spaces than required by law, while making clear he could still elect to construct up to the maximum of 85 then required by the Zoning Ordinance. Thus, because the "cure" in 2002 for the Property's "site-specific hardship" was to reduce the mandated number of off-street parking spaces from 85 to 43, Suburban cannot now leverage this variance to legally justify construction of the heretofore unbuilt 42 reserved parking spaces.

Furthermore, the relief sought by Suburban is not the same as that which was granted via variance to Hager in 2002. "A dimensional variance involves a request to adjust zoning regulations to use the property in a manner consistent with regulations[.]" *Tri-Cty. Landfill, Inc. v. Pine Twp. Zoning Hr'g Bd.*, 83 A.3d 488, 520 (Pa. Cmwlth. 2014). Whereas the 2002 dimensional variance gave Hager leave to deviate downwards from the Zoning Ordinance's minimum requirements for off-street parking, Suburban now seeks special dispensation from the Zoning Ordinance's maximum impervious coverage limit. These are, to state the obvious, two entirely different things. Suburban thus has no authority under the 2002 variance to build the additional parking spaces, as it does not give Suburban the right to

---

[9] Section 910.2(a)(5) of the MPC, added by the Act of December 21, 1988, P.L. 1329.

9

exceed the Zoning Ordinance's maximum impervious coverage limit for the Property.

### b. Expiration of Right to Build the 42 Reserved Parking Spaces

Suburban also correctly argues that the Zoning Board misconstrued the MPC in concluding that the Supervisors' 2002 approval of Hager's development plan only protected Hager's ability to build the 42 reserved spaces for 5 years after the plan's approval. Section 508(4)(ii) of the MPC states, in relevant part, that

> [w]hen an application for approval of a plat,[10] whether preliminary or final, has been approved without conditions or approved by the applicant's acceptance of conditions, no subsequent change or amendment in the zoning, subdivision or other governing ordinance or plan shall be applied to affect adversely the right of the applicant to commence and to complete any aspect of the approved development in accordance with the terms of such approval within five years from such approval.

53 P.S. § 10508(4)(ii). In other words, all parts of an approved land use development plan are insulated from subsequent changes to applicable, local land use laws for five years after the plan's approval. The Zoning Board applied this statutory provision to the current matter and concluded that Hager and his successors-in-interest were only protected from Ordinance 2-2003's more stringent impervious coverage limits until October 15, 2007, or five years after the Supervisors gave final approval to Hager's 2002 development plan. Decision at 9. Thus, the Zoning Board determined that any right to construct the 42 reserved parking spaces, which would result in total impervious coverage on the Property exceeding that allowed under both the Zoning Ordinance and the terms of AKA's 2010 *de minimis* variance, expired on that date. *Id.*

---

[10] A plat is "[a] map describing a piece of land and its features, such as boundaries, lots, roads, and easements." Black's Law Dictionary 538 (3d Pocket ed. 2006).

These conclusions ignore Section 508(4)(iv) of the MPC, which provides:

> Where the landowner has substantially completed the required improvements as depicted upon the final plat within the aforesaid five-year limit, or any extension thereof as may be granted by the governing body, no change of municipal ordinance or plan enacted subsequent to the date of filing of the preliminary plat shall modify or revoke any aspect of the approved final plat pertaining to zoning classification or density, lot, building, street or utility location.

53 P.S. § 10508(4)(iv). Given that the only part of Hager's 2002 development plan that was not built as part of the La-Z-Boy building project was the 42 reserved spaces, there can be no doubt that Hager substantially completed the required improvements, which therefore renders the 5-year time limit inapplicable. The Zoning Board thus erred by concluding that the protection afforded to the 42 reserved parking spaces from the Zoning Ordinance's 60% impervious coverage limitation, which was adopted through Ordinance 3-2003, expired by operation of law on October 15, 2007.

However, the Zoning Board's error is ultimately a harmless one, due to the combined effect of Section 508(4)(iv) of the MPC and the Supervisors' approval in 2008 of AKA's development plan.[11] "In interpreting a statute, this Court endeavors to 'ascertain and effectuate the intention of the General Assembly.' 1 Pa. C.S. § 1921(a). Because, []generally, the best indicator of legislative intent is the plain language of the statute,[] we begin our inquiry by considering the words of the statute." *Scungio Borst & Assocs. v. 410 Shurs Lane Developers, LLC,* 146 A.3d 232, 238 (Pa. 2016) (internal citation and some punctuation omitted). Critically, Section 508(4)(iv) of the MPC states, in part, that "*no change of municipal*

---

[11] We may affirm a lower tribunal on any basis that is clear upon the face of the record. *In re A.J.R.-H.*, 188 A.3d 1157, 1175-76 (Pa. 2018).

11

*ordinance or plan* enacted subsequent to the date of filing of the preliminary plat shall modify or revoke any aspect of the approved final plat[.]" 53 P.S. § 10508(4)(iv) (emphasis added). By its plain language, Section 508(4)(iv) of the MPC protects an existing, approved and substantially completed development plan from the effects of post-approval changes to applicable municipal regulations. What it *does not do*, however, is preserve the particulars of an approved and substantially completed development plan that has been superseded by a newer, more recently approved, materially different development plan for the same property.

In this case, AKA's 2008 development plan was materially different from, and superseded, Hager's 2002 development plan. The AKA development plan only provided for 41 off-street parking spaces on the Property and made no mention of the 42 reserved spots that had been part of Hager's 2002 development plan. Zoning Board Hr'g Tr., 8/1/18, at 74; Decision, F.F., ¶¶ 14, 19; R.R. at 233a. The number of off-street parking spaces called for through AKA's development plan was driven by two things: the change in the Property's use from furniture store to medical facility, and the Zoning Ordinance's disparate parking requirements pertaining to each of these usage categories. *See* Decision at 8-9; Zoning Ordinance, Schedule 27-VI, Regulations for Off-Street Parking Spaces. Thus, the protection afforded by Section 508(4)(iv) of the MPC to Hager's 2002 development plan, which shielded it from the more stringent impervious coverage limitations imposed by Ordinance 3-2003, disappeared upon the Supervisors' approval in 2008 of AKA's development plan. Consequently, Suburban does not have the right to construct the 42 previously reserved off-street parking spaces on the Property.

## IV. Conclusion

As none of the issues raised by Suburban are meritorious, we affirm the Trial Court's May 8, 2019 order, through which the Trial Court upheld the Zoning Board's September 5, 2018 decision.[12]

_____
ELLEN CEISLER, Judge

---

[12] Suburban also states in a footnote at the end of its appellate brief that it wishes to preserve its argument that it retains a vested right to the relief granted to Hager by the 2002 variance, as well as that the Zoning Board erred by denying Suburban's application for a new variance that would allow for the construction of the aforementioned 42 reserved parking spaces. Suburban's Br. at 26 n.1. We deem both of these arguments waived, to the extent they articulate different bases for ruling in Suburban's favor than the arguments addressed in the discussion section of the foregoing opinion, due to Suburban's failure to fully and properly brief them. *Dobson Park Mgmt., LLC v. Prop. Mgmt., Inc.*, 203 A.3d 1134, 1139 (Pa. Cmwlth. 2019); Pa. R.A.P. 2119(a).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Suburban Realty, L.P.,                      :
                   Appellant        :
                             :
        v.                        :  No. 715 C.D. 2019
                             :
Stroud Township Zoning Hearing    :
Board and Stroud Township Board   :
of Supervisors                    :

# **O R D E R**

AND NOW, this 9th day of July, 2020, the Court of Common Pleas of Monroe County's (Trial Court) May 8, 2019 order, through which the Trial Court affirmed Appellee Stroud Township Zoning Hearing Board's September 5, 2018 decision, is AFFIRMED.

                                      _____

                                      ELLEN CEISLER, Judge